AO 91 (Rev. 11/11)  Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT
10/27/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

FILED
CLERK, U.S. DISTRICT COURT
10/27/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: _D. Brown_ DEPUTY

UNITED STATES OF AMERICA, )
v. )
SERGIO ROMO-AYALA, )  Case No. 5:21-mj-00651
)
)
)
)
_Defendant(s)_

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  October 25, 2021  in the county of  Riverside  in the
Central  District of  California , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), and (b)(1)(A)(ii) | Possession with Intent to Distribute Cocaine |

This criminal complaint is based on these facts:
Please see attached affidavit.

☑ Continued on the attached sheet.

/s/ signed pursuant to Fed. R. Crim. P. 4.1
_Complainant's signature_

DEA Special Agent, Derek J. Hammerl
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 10/27/2021

_Judge's signature_

City and state:  Riverside, CA     Honorable Kenly Kiya Kato, U.S. Magistrate Judge
_Printed name and title_

AUSA: Byron R. Tuyay (x6230)

**AFFIDAVIT**

I, Derek J. Hammerl, being duly sworn, declare and state as follows:

**PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint and arrest warrant against Sergio ROMO-AYALA ("ROMO-AYALA") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii): Possession with Intent to Distribute Cocaine.

2. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

**BACKGROUND OF SPECIAL AGENT HAMMERL**

3. I am a Special Agent ("SA") of the United States Drug Enforcement Administration ("DEA") and have been employed with the DEA since July 2018. I am currently assigned to the DEA's Riverside District Office, Task Force Group 1 ("RDO TFG-1"), investigating large-scale drug trafficking organizations operating in the Southern California area and elsewhere. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section

2510(7), and I am empowered to conduct investigations and to make arrests for the offenses enumerated in Title 18, United States Code Section 2516.  During my employment with the DEA, I have received 640 hours of narcotics law enforcement training while attending DEA Basic Agent Training at the DEA Academy, Quantico, Virginia.  Additionally, I have received 72 hours of training on money laundering and financial crimes investigations.

4. Prior to joining the DEA, I was employed as a State Trooper with the Pennsylvania State Police from September 2015 to June 2018.  During my tenure as a State Trooper, I was assigned to Troop L-Reading Patrol Section, where I enforced the Commonwealth of Pennsylvania's Vehicle Code, Criminal Code, and Health and Safety Code (drug laws).  I also enforced Federal Motor Carrier Safety Regulations through the Pennsylvania State Police Motor Carrier Safety Assistance Program.  Additionally, I have received specialized training through the U.S. Department of Homeland Security, Homeland Security Investigations in investigating hidden compartments in motor vehicles.

5. Based on my training, conversations with other narcotics investigators, and my previous experience in the law enforcement field, I am familiar with drug traffickers' methods of operation, including the distribution, storage, transportation of drugs, the collection of drug proceeds, and methods of money laundering used to conceal the nature of the proceeds.  I have received training and have collaborated with other law enforcement officers about investigations regarding

2

the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal narcotics, in violation of Titles 18 and 21 of the United States Code.

## SUMMARY OF PROBABLE CAUSE

6.  On October 25, 2021, Riverside Sheriff's Department ("RCSD") Deputy Juan Salcido from the Vehicle Interdiction Pipeline Enforcement Resource conducted a traffic stop on a vehicle on Interstate 10 near North Indian Canyon Drive in Palm Springs, California.  After the driver stopped, he consented to Deputy Salcido's search of his car; Deputy Salcido then found three duffle bags containing what appeared to be kilo-sized narcotics packages in the trunk.

7.  Upon further inspection at the RCSD Palm Desert Station, I saw the three duffle bags with the kilo-sized objects and those objects were packaged in one of two ways.  One type of packaging consisted of gray kilo-sized objects with handwritten markings "GTR" and "ZAGA," and the second type of packaging consisted of black kilo-sized objects.  There were fifty-two kilo-sized objects in the three duffle bags in total, which weighed approximately fifty-seven kilograms.  Deputy Ned Hyduke tested one gray and one black kilo-sized object with a TruNarc Handheld Narcotics Analyzer device, and both objects presumptively tested positive for cocaine.

**STATEMENT OF PROBABLE CAUSE**

8. Based on my conversations with Deputy Salcido, my review of Deputy Salcido's body worn camera, and my own participation in the investigation, I am aware of the following:

**A.  Traffic Stop on a Gray Toyota Sedan on October 25, 2021, in Palm Springs, California**

9. On October 25, 2021, Deputy Salcido saw a gray Toyota sedan bearing a California license plate number 7BRX892 traveling westbound on Interstate Highway 10 just west of North Indian Canyon Drive in Riverside County.  Deputy Salcido noticed a red Nissan sedan that appeared to be following behind the Toyota as both vehicles maintained the same speed.  Although traffic appeared to be light, Deputy Salcido saw the Toyota traveling slowly in its lane and impeding traffic.  At approximately 3:03 p.m., Deputy Salcido stopped the Toyota on Interstate Highway 10 near North Indian Canyon Drive in Palm Springs for violating California Vehicle Code section 22400(a), impeding traffic.

10. Deputy Salcido noted that once he initiated his traffic stop on the Toyota, the red Nissan immediately took the exit for North Indian Canyon Drive.  Deputy Salcido contacted the driver and sole occupant of the Toyota.  Deputy Salcido identified the driver by his California driver's license as ROMO-AYALA.  ROMO-AYALA also provided his vehicle registration confirming that he owned the Toyota.  While speaking with ROMO-AYALA, Deputy Salcido noticed that ROMO-AYALA was nervous and shaking.

11. After ROMO-AYALA gave Deputy Salcido his driver's license and registration, Deputy Salcido asked ROMO-AYALA if he would come out of his car so they could talk more, and ROMO-AYALA agreed. After speaking with ROMO-AYALA, Deputy Salcido noticed ROMO-AYALA made an inconsistent statement. ROMO-AYALA first stated he was heading to Los Angeles and then ROMO-AYALA changed his statement by stating he was heading to Perris, which is not in Los Angeles County. Once Deputy Salcido was done speaking with ROMO-AYALA, Deputy Salcido handed ROMO-AYALA his driver's license and registration and told him to be more careful and to have a good day.

12. Deputy Salcido then contacted ROMO-AYALA again asking him if they could speak, and ROMO-AYALA agreed. Deputy Salcido asked ROMO-AYALA for consent to search his vehicle, and ROMO-AYALA again agreed. As ROMO-AYALA stood alongside the road not handcuffed, Deputy Salcido searched the Toyota's trunk and saw three duffle bags. One of the duffle bags was partially opened, and Deputy Salcido saw inside several kilo-sized objects. Based on his training and experience, Deputy Salcido believed the kilo-sized objects were consistent with the appearance of narcotics packages, and he placed ROMO-AYALA in the back of his patrol vehicle.

13. After searching the Toyota, Deputy Salcido then closed the trunk and conducted an exterior sniff of the Toyota with his K-9 partner, Rocky, a trained narcotics detecting dog. Deputy Salcido stated Rocky alerted to a presence of an odor of narcotics at the trunk of the Toyota where Deputy Salcido had

just seen the duffel bags. Deputy Salcido then explained that Deputy Hyduke conducted an exterior sniff of the Toyota with his K-9 partner, Woody. Deputy Hyduke also saw Woody alert to the trunk of the Toyota. Based on the positive alerts from Rocky and Woody and the appearance of the packages he saw in plain view in the opened duffel bag, Deputy Salcido suspected that the duffle bags contained narcotics. ROMO-AYALA, the Toyota, and the three duffle bags containing suspected narcotics were transported to the RCSD Palm Desert Station for further investigation.

  B.   **DEA RDO TFG-1 Investigation on October 25, 2021**

  14. On October 25, 2021, I received information regarding the traffic stop involving ROMO-AYALA. At the RCSD Palm Desert Station, I saw the three duffle bags in the trunk of ROMO-AYALA's Toyota. I then took the three duffle bags out of the trunk and counted fifty-two rectangular shaped objects which were contained in the three duffle bags. The fifty-two kilo-sized objects were contained in either a gray packaging with hand-written markings "GTR" and "ZAGA" or black packaging. I then further searched the Toyota's trunk and found a black backpack containing a Credit One Bank Visa credit card bearing the name "Sergio Romo."

  15. Based on my training and experience, the fifty-two kilo-sized objects were consistent with the way narcotics traffickers individually package approximately one kilogram of narcotics.

16. Deputy Hyduke conducted a presumptive test of one gray and one black kilo-sized rectangular package using a TruNarc Handheld Narcotics Analyzer device, and both packages presumptively tested positive for the presences of cocaine.

C.   **Mirandized Interview of ROMO-AYALA**

17. After searching the Toyota, members of my investigative team and I interviewed ROMO-AYALA while at the RCSD Palm Desert Station. ROMO-AYALA was *Mirandized*, signed an Advice of Rights form, and agreed to answer our questions. In summary, ROMO-AYALA stated the following:

   a.   He met some people in Mexico approximately one month ago at a bar. ROMO-AYALA approached them and agreed to work for them. ROMO-AYALA transported "merchandise" for them once before which consisted of one duffle bag with approximately "seventeen" and was paid $5,000 as a courier fee.[1]

   b.   In the first instance when ROMO-AYALA worked for the unknown people from Mexico, he was instructed by an unknown number with a Los Angeles area code (the "Los Angeles number") via WhatsApp text messages to meet unknown individuals at a public place. At the public place, an unknown individual loaded his car with the duffle bag. ROMO-AYALA was then told by the

---

[1] ROMO-AYALA made a prior statement which he detailed the contents of the duffle bags as "merchandise." Then, ROMO-AYALA made a statement which be believed there were "seventeen" in the one duffle bag during his first time transporting for these unknown individuals. Based on my training and experience, I believe ROMO-AYALA refers to the suspected narcotics found within the duffle bags as "merchandise" and the "seventeen" he mentioned were seventeen kilograms of narcotics similar to the approximate fifty-seven kilograms of suspected cocaine found in the trunk of his vehicle during the traffic stop.

7

Los Angeles number that his car was ready and texted him an address to a gas station where he was instructed to drive. There, ROMO-AYALA waited for another unknown individual who retrieved the duffle bag.

      c.  On the morning of October 25, 2021, before the traffic stop, ROMO-AYALA received a text from the Los Angeles number via WhatsApp instructing him to go to a Taco Bell in El Centro, California. At the Taco Bell, ROMO-AYALA's car was loaded with the three duffle bags by unknown individuals while parked in the Taco Bell parking lot. ROMO-AYALA was inside the Taco Bell as his car was being loaded. Then, ROMO-AYALA stated he received a message via WhatsApp from the Los Angeles number with the address of a gas station where he was to deliver the duffle bags. ROMO-AYALA did not identify who the individuals in Mexico or at the Taco Bell were, what type of vehicle the individuals at the Taco Bell drove, what the specific Los Angeles area code number was, or who used the Los Angeles number. ROMO-AYALA stated he was supposed to be paid $1,500 as his courier fee for this incident.

    18. I then asked ROMO-AYALA if he would give us permission to search his phone, to which he agreed. He signed a Consent to Search form and provided us his passcode. Upon an initial search of ROMO-AYALA's phone, I could not find a number with a Los Angeles area code, and I asked ROMO-AYALA for the contact name he assigned to the Los Angeles number. ROMO-AYALA replied by stating he deleted the number as he was getting pulled over

by Deputy Salcido. ROMO-AYALA stated the purpose of him deleting the number was "if [he] got caught."

19. ROMO-AYALA was asked if he would be willing to make a controlled narcotics delivery to where the duffle bags were supposed to go, and ROMO-AYALA stated he was supposed to be at the destination at approximately 5:00 p.m. and, therefore, the receiver would likely suspect something was wrong.

## CONCLUSION

20. For all of the reasons described above, there is probable cause to believe that ROMO-AYALA has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii): Possession with Intent to Distribute a Cocaine.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 27th day of
October, 2021.

_____
HONORABLE KENLY KIYA KATO
UNITED STATES MAGISTRATE JUDGE

9